UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------X   Civ. Action No.: 2:18-CV-10037 (CCC)(MF)

S.P. on behalf of her minor daughter, K.H.,

                Plaintiff,          **FIRST AMENDED COMPLAINT**

-against-

                    **<u>WITH DEMAND FOR JURY TRIAL</u>**

PISCATAWAY TOWNSHIP BOARD OF
EDUCATION,

                Defendant.

-------------------------------------------------------X

Plaintiff, S.P., on behalf of her minor daughter, K.H., through her attorneys, C.A. GOLDBERG

PLLC, by way of a First Amended Complaint against the Defendant Piscataway Township Board

of Education says:

<u>PRELIMINARY STATEMENT</u>

1.   This is a case about a middle school student who was severely disciplined in response to

reporting a serious sexual assault that had occurred less than 24 hours before.

2.   K.H., a 14-year-old girl, was enrolled as an eighth grader at Theodore Schor Middle

School when she was sexually assaulted by a fellow student. Up until the assault and its

aftermath, K.H. had been a model student at her school. She received high grades, she was

admired by and had close relationships with her teachers, she was engaged in extracurricular

activities, and she led a healthy social life.

3.   K.H.'s normalcy was destroyed one day in June 2016 when she was sexually assaulted on

a school bus ride by a male student. The assault itself was incredibly traumatic. Even more

destructive to K.H. was the school's response to her when she courageously reported the assault

to school officials. Without undertaking even a modicum of an investigation into K.H.'s serious allegations, the school's Vice Principal made the knee-jerk decision to suspend K.H. mere hours after the assault was reported. The basis for the suspension: "disorderly conduct" on the school bus. Instead of protecting one of their young female students, instead of responding to her distress and remedying the effects of her trauma, school officials ruthlessly and unreasonably attacked her, blamed her, and punished her. After reporting what had occurred to her, K.H. was suspended from school - for being sexually assaulted while under the school's care and supervision.

<u>JURISDICTION & VENUE</u>

4. The United States District Court has jurisdiction under 28 U.S.C. §1331 as at least two of Plaintiff's causes of action arise under Title IX of the Education Amendments of 1972.

5. This Court has supplemental jurisdiction over this action under 28 U.S.C. § 1367, because the claims that arise under the laws of New Jersey are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Plaintiff is a resident of the State of New Jersey.

7. Defendant is located in and primarily conducts business in the State of New Jersey.

<u>PARTIES</u>

8. Plaintiff S.P., the natural parent and sole legal guardian of K.H., resides in Piscataway, New Jersey with K.H. During all times relevant to this proceeding, K.H. attended T. Schor Middle School for her eighth grade academic year and Piscataway High School for her ninth grade academic year.

9. Defendant PISCATAWAY TOWNSHIP BOARD OF EDUCATION (hereinafter "Piscataway BOE") manages and oversees the Piscataway Township public school district which

includes over 7,000 students in pre-kindergarten through twelfth grades from Piscataway Township, in Middlesex County, New Jersey. The Piscataway BOE is a recipient of federal funding. It is responsible for, among other things, employing the superintendent of the Piscataway School District; developing and adopting the school district's policies; and adopting the school district operating budget.

10. TERESA RAFFERTY is the Superintendent of the Piscataway Township School District and is responsible for implementing the Board's policies, hiring, supervising, and managing school district staff, planning and managing the district budget, monitoring school educational programs and student achievement, and otherwise coordinating and supervising all school operations.

11. THEODORE SCHOR MIDDLE SCHOOL (hereinafter "T. Schor") is a school that serves approximately 600 students grades 6 through 8. It operates within and under the purview of the Piscataway Township School District.

12. PISCATAWAY HIGH SCHOOL (hereinafter "Piscataway High") is a school that serves approximately 2,173 students. It operates within and under the purview of the Piscataway Township School District.

## FACTUAL BACKGROUND

### District Rules

13. The New Jersey Anti-Bullying Bill of Rights Act, N.J.S.A. 18A:37-13.2 (hereinafter "Anti-Bullying Act") requires each school district to adopt a policy prohibiting harassment, intimidation or bullying on school property, at a school-sponsored function or on a school bus.

14. The Piscataway BOE's Policy on Harassment, Intimidation, and Bullying ("HIB Policy"), issued on September 22, 2011, outlines the Piscataway Tp. Sch. District's procedures and

obligations upon the reporting of any instances of harassment, intimidation and/or bullying[1]. Upon information and belief, this HIB Policy was in effect during all times relevant to this proceeding.

15. The HIB Policy defines harassment, intimidation, or bullying as any gesture, any written, verbal or physical act, or any electronic communication, whether it be a single incident or a series of incidents that is:

    a.   reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic; and that

    b.   takes place on school property, at any school-sponsored function, on a school bus, or off school grounds, as provided for in N.J.S.A. 18A:37-15.3, that substantially disrupts or interferes with the orderly operation of the school or the rights of other students; and that

    c.   a reasonable person should know, under the circumstances, that the act(s) will have the effect of physically or emotionally harming a student or damaging the student's property; or

    d.   placing a student in reasonable fear of physical or emotional harm to his person or damage to his property; or

    e.   has the effect of insulting or demeaning any student or group of students: or

---

[1] Accessible at
http://p3cdn3static.sharpschool.com/UserFiles/Servers/Server_804050/File/Announcements/HARASSMENT,%20IN
TIMIDATION%20AND%20BULLYING%20POLICY.pdf (last viewed on September 17, 2018).

     f.   creates a hostile educational environment for the student by interfering with a

        student's education or by severely or pervasively causing physical or emotional

        harm to the student.

HIB Policy, at p. 1.

16. The Piscataway HIB Policy requires "a thorough and complete investigation to be conducted for each report of an alleged incident of harassment, intimidation, or bullying". It requires that the investigation be conducted by the school anti-bullying specialist appointed by the school principal and instructs that the investigation should be completed and written findings submitted to the principal no later than ten school days from the dates of the written report of the alleged incident of harassment. *Id*, at p. 7.

17. After submission of these written findings to the principal, the principal must then submit the report to the Superintendent of School within two school days of the completion of the investigation, then the Superintendent, in turn, is to report the results of each investigation to the Board of Education. *Id.*

18. School officials are to notify parents of students involved in an investigation within five days after the results of the investigation are reported to the Board of Education. *Id.*

19. The HIB Policy specifically prohibits a "Board of Education member, school employee, …. from engaging in reprisal, retaliation, or false accusation against a victim, witness...who reports an act of harassment, intimidation, or bullying." *Id.* at p. 8.

<u>The Assault</u>

20. K.H. is a young African-American girl raised by a single mother. She was enrolled as an eighth-grader at T. Schor during the 2015-2016 academic year. She was 14 years old during the events at issue.

21. Prior to the events described herein, K.H. was a model student active in extracurriculars, including gymnastics and cheerleading.

22. K.H. maintained excellent grades. She made the honor roll during the first semester of her eighth grade year. She also maintained an unblemished disciplinary record during her enrollment at T. Schor.

23. Prior to these events, K.H. had never had sexual experiences with anyone. She had never been intimate with and had never "gone out on a date" with a boy.

24. On June 1st, 2016 K.H. went on a school field trip to Forest Lodge in Warren, New Jersey. It was an annual field trip organized for the eighth grade students at T. Schor. Forest Lodge is an outdoor event space that includes a swimming pool.

25. T. Schor had arranged the same school trip during the previous year. K.H. was only in seventh grade and did not attend. Upon information and belief, during the 2015 trip several male students from T. Schor engaged in physical altercations with male students from another school, Maplewood Middle School. Upon information and belief, police had been called and several of the involved students were arrested.

26. Despite the problems that occurred during the 2015 trip, T. Schor organized the same trip in 2016, again with Maplewood Middle School.

27. T. Schor transported their eighth grade students to Forest Lodge by school buses. K.H. was on a bus accompanied by four supervising adults. These adults included the bus driver, two T. Schor teachers, Emily Slavik ("Slavik") and Maria Perry ("Perry"), and the T. Schor school nurse, Jasmine Cromartie ("Cromartie"). Slavik, Perry, and Cromartie all sat in the front row of the bus during the thirty minute ride to Forest Lodge. K.H. also sat in the front row beside Cromartie, with whom she was friendly.

28. At no point did Slavik, Perry, or Cromartie leave their seats to monitor students in the middle or back of the bus.

29. While swimming in the pool at Forest Lodge with her friends, a group of male students from Maplewood Middle School began sexually harassing K.H. and her friends. The boys grabbed them, grabbed their buttocks, and pushed themselves against the girls from behind. K.H. and her friends tried to avoid these boys by swimming to the other side of the pool. Finally, a Maplewood teacher noticed the male students from Maplewood harassing K.H. and her friends and told the boys to stop.

30. None of the T. Schor teachers or staff were monitoring students at the pool. For most of the trip, they remained on a hill in the park adjacent to the pool.

31. At some point while K.H. was in the pool area, Perry confronted K.H. and said that another teacher had complained that K.H. was "messing with boys and twerking"[2]. K.H. described to Perry what had really happened - that a group of boys had been harassing her and her friends. In response Perry said "I know you're not like that", and "I don't want them calling you a ho". Perry told K.H. that she would go speak to one of the Maplewood teachers about the boys' behavior but, upon information and belief, she never did.

32. When it was time to return to T. Schor, K.H. tried to get a seat on the bus beside her friend, "L,"[3] but they couldn't find seats together. So K.H. sat in an available middle seat approximately two rows from the back of the bus, squeezed in between two male students, "D"

---

[2] Twerking is defined by Meriram-Webster as "sexually suggestive dancing characterized by rapid, repeated hip thrusts and shaking of the buttocks especially while squatting". *See* https://www.merriam-webster.com/dictionary/twerking; retrieved on June 1, 2018.

[3] Upon information and belief, the students identified in this complaint are all minors so will be referred to by their first initial (or full initials if known) pursuant to FRCP 5.2(a).

and "K.B." "D" sat on the aisle, and K.B. sat next to the window. Once again, the adults, Slavik, Perry, and Cromartie sat in the front row.

33. Approximately five minutes after the bus departed Forest Lodge, K.B. began to touch and grab K.H's leg. K.H. repeatedly removed K.B.'s hand from her leg and tried to inch toward "D", who had his back to her and was facing the aisle.

34. K.B. grabbed K.H.'s leg another two or three times. After a brief pause, he intensified his efforts and grabbed K.H. by the waist and tried to put her on his lap. K.H. moved away from him and tried to get "L"s attention. "L" did not grasp at the time that K.H. needed help.

35. K.B. pulled his shorts down. He grabbed K.H.'s hand and tried to put it inside his underwear. K.H. told K.B. to leave her alone but he kept pulling her arm towards his groin. K.H. tried to pull away and turn her body away towards "D". Nobody seemed aware of the struggle and K.H. was in too much shock to scream.

36. K.B. proceeded to pull out his penis. He grabbed K.H. by the back of her head, and pushed her head down towards his penis. K.H. tried pulling her head away but K.B. forced her head down again. Despite her resistance, he pushed her head down approximately five times. Her lips made contact with K.B.'s penis before K.H. freed herself, just as the bus pulled into the school's parking lot.

37. At no point during the bus ride did any of the school officials leave their seats to monitor the kids.

38. As soon as the bus stopped, K.H. hurried towards the front, got off the bus, and ran to her grandmother's car.

39. When she returned home, K.H. immediately went to her room and did not come out until the next morning. That night she felt very strange and anxious. She was in shock by what had occurred and was fearful of returning to school the next day.

The School's Response

40. On the day following the school trip, June 2nd, 2016, K.H. arrived at her school bus stop to be greeted by K.B., who lived in the same housing complex as K.H., and one of his friends. The friend sarcastically remarked to K.H. "did you guys have fun on the bus yesterday?" K.H., humiliated by his words, told him to shut up and moved away from them. The bus came soon after that and K.H. made sure she sat far away from K.B. and his friends.

41. When K.H. entered the school, K.B. and his friends began staring and leering at her. K.H. made her way into one of the stalls in the girls' bathroom and began to cry. A few of her friends followed her.

42. One friend alerted Cromatie. Meanwhile, K.B. and his friends menacingly stood outside of the girls' bathroom and called K.H. names such as "ho" and "dirty".

43. Cromartie pulled K.H. out of her homeroom class and brought her to her office. K.H. recounted details of the sexual assault on the bus the day before. While K.H. spoke with Cromartie, Perry entered the office. Cromartie asked K.H. to repeat the story to Perry.

44. K.H. stayed in Cromartie's office for most of the day, through six class periods. Finally, the Assistant Principal, Dr. Orsolina Cetta ("Cetta"), entered the office and asked K.H. to again recount what had occurred and to write everything down. She also asked K.H. to draw a diagram of the bus depicting all of the seating arrangements. During the interview, Cetta said the following to K.H.: "Why didn't you just get up and walk away?"; "This wouldn't have happened if you had just moved."; and, "You sat next to him so it's kind of your fault." (emphasis added.)

9

45. Cetta then sent K.H. to her last class of the day and told her she would speak to the other students who had been on the bus during the time of the assault. Before class ended, Cetta summoned K.H. back to her office and informed her that she had (somehow) spoken to "twelve students" all of whom purportedly said that K.H. "was lying and wanted to do it again, and was just embarrassed." Despite claiming to have interviewed twelve students, Cetta could only give K.H. two students' names. One of the two students was "L", K.H.'s friend. "L" would later tell K.H. that she had told Cetta that K.H. had signaled for help on the bus but "L" had not comprehended what K.H. was trying to signal. The other student, "E", later recounted that Cetta hadn't really asked him any questions and that the only thing that he had said to Cetta was that he hadn't been paying attention.

46. After telling K.H. that these twelve other students had denied witnessing any wrongdoing, Cetta sent K.H. back to class. By the time K.H. returned home that day, Cetta had called her mother to tell her that K.H. had been suspended from school for performing oral sex on another student on the bus.

47. The following day, K.H.'s mother and grandmother went to T. Schor to meet with the Principal, Richard Hueston ("Hueston"), Cetta, and another school administrator. K.H.'s grandmother demanded to see video from the bus ride and asked if the school had contacted the police. They had not. Strangely, Cetta informed K.H.'s mother that all of the other students on the bus had reported being asleep during the alleged assault. This contradicted what she had told K.H. the previous day. K.B, the perpetrator, had not been suspended from school as of yet. Upon information and belief, it was only when K.H.'s mother and grandmother informed the school that they would be filing a report with the police that the school took action to suspend K.B.

48. After their visit to the school, K.H.'s mother took K.H. to a local police station to report what had occurred. The police confirmed that the school had not contacted them.

49. The police acquired the video footage (footage that the school had not bothered to review prior to suspending K.H.) and saw proof of K.H.'s account of events.

50. Eventually, K.B. would be charged with assault. In September 2016, he pled guilty to simple assault in juvenile court.

51. Prior to the sexual assault against K.H, it was known or should have been known that K.B. had a history of disciplinary problems at T. Schor. Upon information and belief, he had been disciplined a number of times for, among other infractions, pulling his pants down during class, grabbing female students' buttocks, and being disrespectful towards school staff. Despite the fact that K.B.'s prior behavior was or should have been known by T.Schor, school officials failed to take K.H.'s claims of sexual assault seriously and failed to undertake a meaningful investigation.

52. The school's knee-jerk and patently unreasonable response was to instead suspend K.H., a student with no prior disciplinary record, who had reported a sexual assault.

53. K.H. was suspended for a total of ten school days. As a part of K.H.'s suspension, Cetta also barred K.H. from attending an eighth grade school dance, an event that K.H. had been looking forward to and that she had already bought a dress for. K.H. was forced to take her final exams at home, but the school never collected them from her.  This undoubtedly had a substantial impact on her grades. While she was assigned tutors, it was still less instruction time than she should have received.

54. K.B., the sexual offender,  received a shorter suspension than K.H.

55. K.H. returned from her suspension on the very last day of school, a day called "Field Day". Despite her suspension being over, Cetta told K.H. that she would not be allowed to

participate in Field Day. K.H.'s mother intervened, and Cetta begrudgingly agreed to include K.H. And though she originally agreed she wouldn't, Cetta also allowed K.B. to attend Field Day, despite K.H. having expressed her deep discomfort at the idea of having K.B. around.

56. After the summer break, both K.H. and K.B. enrolled at Piscataway High School as ninth graders. Defendants continued to show deliberate indifference towards K.H.'s right to a safe and accessible education by forcing K.H. to ride the same bus as her offender and placing them in the same classes despite K.H. and her representative's requests that they be kept separate.

57. Upon information and belief, Kathryn Garcia ("Garcia") was designated as T.Schor's Anti-Bullying Specialist during all times relevant to this proceeding.

58. Upon information and belief, Garcia was not involved in reviewing or investigating K.H.'s report of sexual assault to school officials.

59. Upon information and belief, the school officials who did respond to and/or "investigated" K.H.'s report of sexual assault did not follow the investigation and reporting procedures outlined in the Piscataway HIP Policy and described in part in paragraphs 16-19 above.

60. By immediately punishing and suspending K.H. within hours of her sexual assault report, school officials violated provisions of the HIB Policy which specifically prohibit retaliatory actions against victims who report incidents of sexual harassment.

<u>KH's Injuries</u>

61.  As a result of assault, and the school's response, K.H. suffered extreme anxiety, sleeplessness, depression and severe emotional distress.

62. After the assault, K.H. began to see a therapist and continues to attend therapy sessions through this date.

63. She still experiences anxiety due to what happened and sometimes doesn't want to go to school. K.H. could not sleep for a long time, had nightmares, and often had to sleep in her mother's bed.

64. K.H. stopped socializing and no longer trusts people. To avoid seeing K.B. at her housing complex, she spent many nights at her grandmother's away form her home.

65. More than a year after the event, recurring nightmares began again. K.H. reports that these nightmares often depict someone coming after her, trying to hurt her. These nightmares led K.H. to have a massive panic attack requiring her to be hospitalized.

66. School officials failed to properly supervise students and keep K.H. safe; they failed to investigate her claims of sexual assault despite their obligations to do so; they irrationally and deliberately accused her of wrongdoing; they reflexively punished her; and they continued to subject her to a hostile school environment, all in violation of her rights. These actions caused K.H. substantial physical, emotional, and psychological harm.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
(Defendant's violation of K.H.'s rights under Title IX of the Educational Amendments of 1972)

67. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

68. Title IX of the Educational Amendments of 1972 provides that, "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. §1681

69. Sexual harassment is deemed a form of discrimination for Title IX purposes.

70. Defendant is a recipient of Federal financial assistance.

71. K.H., a student under Defendant's purview, was a victim to sexual harassment by another student during a school-sponsored and chaperoned trip.

72. The sexual harassment endured by K.H. occurred under circumstances wherein Defendant's agents and employees exercised substantial control over both the harasser and the context in which the harassment occurred.

73. Defendant, and school officials under its control, obtained actual knowledge of the sexual harassment perpetrated against K.H almost immediately following the incident, and otherwise should have or had actual knowledge of the risk of sexual harassment based on prior acts committed by the harasser on school grounds.

74. School officials under Defendant's control had the authority and obligation to address the severe sexual harassment and discrimination perpetrated against K.H., and to institute remedial and corrective measures so as to preserve K. M's access to her education.

75. Instead, school officials contributed to, condoned, and/or acquiesced in creating a hostile and inaccessible educational environment by engaging in conduct that included, but was not limited to: (1) failing to properly investigate the sexual harassment; (2) unreasonably and callously blaming K.H. for the sexual assault perpetrated against her; and (3) unconscionably punishing K.H. by suspending her from school and refusing to take measures to separate the known harasser from K.H.

76. The sexual harassment perpetrated on K.H. was so severe, pervasive, and objectively offensive that it barred her access to an educational opportunity or benefit.

77. Defendant's actions and/or omissions in response to the assault, further barred K.H. from equal access to an educational opportunity or benefit.

78. The acts and/or omissions described *supra* by school officials under Defendant's control violated K.H.'s right to be free from sexual harassment and sex discrimination within her school.

79. School officials' deliberate indifference, through their actions and/or omissions following the report of the sexual assault, made K.H. liable and vulnerable to sexual harassment and subjected her to a hostile and abusive school environment.

80. School officials under Defendant's control exhibited deliberate indifference as their response to the discrimination perpetrated against K.H. was clearly unreasonable in light of the known circumstances.

81. School officials' deliberate indifference to the severe, pervasive, and objectively offensive sexual harassment suffered by K.H. violates Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681-88.

82. As a result of Defendant's violation of Title IX, Plaintiff has suffered physical, emotional, and psychological damages in an amount to be determined at trial.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
(Defendant's retaliation in violation of K.H.'s rights under Title IX)

83. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

84. K.H. was engaging in a protected activity, learning through her attendance at school, when she was attacked by a fellow student who sexually assaulted her on a school-supervised and school-sponsored bus trip.

85. K.H. was engaging in a protected activity when she reported the sexual assault to school officials the day following the assault, on June 2, 2016. K.H's mother and grandmother were also engaged in a protected activity on June 3, 2016 when they advocated on behalf of their daughter

and granddaughter in response to the school's notice of suspension and confirmed to school officials that K.H. had been victim to a non-consensual sexual assault.

86. K.H., and her mother and grandmother, were seeking corrective and remedial measures in response to sexual harassment perpetrated against K.H. They engaged in this protected activity in response to discrimination that had been perpetrated against K.H. on the basis of her sex.

87. Defendant's agents and employees were aware of this protected activity and took adverse action against it by wrongly treating K.H. as a perpetrator rather than the victim that she was and by imposing an unconscionable and unreasonable punishment.

88. School officials' actions and/or omissions were sufficiently adverse that they would have dissuaded an individual of ordinary firmness from engaging in a protected activity.

89. School officials in Defendant's control retaliated against K.H. in violation of her rights under Title IX of the Educational Amendments of 1972.

90. As a result of Defendant's retaliation in violation of Title IX, K.H. suffered physical, emotional, and psychological damages in an amount to be determined at trial.

**AS AND FOR A THIRD CLAIM FOR RELIEF**
(Defendant's violation of K.H.'s rights under the New Jersey Law Against Discrimination)

91. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

92. T. Schor school officials failed to respond to K.H.'s complaints of sexual harassment in any reasonable manner. They refused and/or failed to implement any remedial measures to address the assault. Rather than protecting K.H., they punished her for being a victim to a sexual assault.

93. School officials failed to undertake a proper investigation into K.H.'s allegations and did nothing to reasonably address the harassment K.H. fell victim to.

94. School officials in Defendant's control did not engage in an appropriate or mandated investigation in violation of the school district's own policies.

95. School officials retaliated against a victim who reported sexual harassment in violation of the school district's own policies.

96. Defendant's HIB Policy lays out numerous factors that should govern school officials' actions before issuing punishments. The policy states that, "the following factors, *at a minimum*, shall be given full consideration by school administrators in the implementation of appropriate consequences and remedial measures for each act of harassment, intimidation, and bullying by students". (Emphasis added). *See* Policy HIB Policy at page 3.

97. School officials failed to notify law enforcement despite it being an enumerated option for addressing harassment, bullying and intimidation under their HIB Policy. *See Id.*, at pp. 5-6, subsection "Environment" listing "law enforcement (e.g. safe schools resource officers, juvenile officer) involvement or other legal actions".

98. The school's decision to punish K.H., and to suspend her, was ruthless and cruel, and utterly failed to address the alarming allegations raised by a young female student under their supervision and care.

99. The sexual assault and subsequent harassment perpetrated against K.H. would not have occurred but for the fact that K.H. was female.

100. K.H. endured an assault, subsequent harassment, and an unconscionable school response that were sufficiently severe and pervasive to create an intimidating, hostile, and/or offensive school environment.

101.     As a result of school officials' violation of the New Jersey Law Against Discrimination, Plaintiff has suffered physical, emotional, and psychological damages in an amount to be determined at trial.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
(Negligence: Defendant's Breach of Duty to protect K.M.)

102.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

103.     At all relevant times described above, Plaintiff was a minor of 14 years.

104.      At all relevant times, T. Schor school officials and Defendant Piscataway BOE controlled, managed, and supervised T.Schor Middle School. During the regular and customary school hours, Defendant had full supervision, care, custody and control of the pupils at T.Schor Middle School, including the infant Plaintiff.

105.     At all relevant times, Plaintiff was lawfully attending school or school-sanctioned and supervised activities.

106.     On or about June 1, 2016, Plaintiff was severely sexually assaulted by another student while on a school-monitored bus trip.

107.     Plaintiff was assaulted and injured because she and her classmates were improperly supervised.

108.     At all relevant times, school officials failed to exercise proper supervision and control over their students. They utterly failed to monitor the students' behavior on the bus.

109.     School officials inflicted further injury on K.H. through their response to the sexual assault.

110.     School officials did not respond as a reasonable person would have responded under similar circumstances.

111.     All of Defendant's actions were negligent and/or palpably unreasonable.

112.     School officials' actions and/or omissions were a direct and proximate cause of the injuries suffered by K.H.

113.     T. Schor's failure to reasonably monitor the school buses, by, for example patrolling the school bus aisles, constitutes a breach of its duty to protect its students. Such failure was a substantial factor in bringing about foreseeable harm to K.H.

114.     Furthermore, school officials' actions and/or omissions in their response to the sexual assault breached the duty of care they owed to K.H. and caused her further physical, emotional, and psychological injuries.

115.     School officials failed to properly or reasonably investigate the serious charges raised by K.H., unconscionably blamed her for the sexual assault, cruelly punished her without any justification, and willfully ignored the continued harassment she was subjected to. These actions and omissions directly caused K.H. to suffer significant psychological and emotional harm.

116.     School officials in Defendant's control were negligent and breached their duty to exercise reasonable care in providing K.H. with a safe and nurturing environment at school. Their actions and/or omissions were the direct and proximate cause of K.H.'s injuries.

117.     As a result of Defendant's negligence, K.H. suffered physical, emotional, and psychological damages in an amount to be determined at trial.

**AS AND FOR A FIFTH CLAIM FOR RELIEF**
(Gross Negligence: Defendant's Breach of Duty with Reckless Indifference)

118.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

119.     School officials in Defendant's control engaged in actions and/or omissions that evinced a reckless indifference to K.H.'s protected rights.

120.     School officials failed to exercise even the slightest care or diligence towards K.H.

121.     School officials in Defendant's control evinced a reckless indifference to K.H. by failing to properly investigate the sexual harassment and by cruelly and outrageously turning the tables on K.H. to punish <u>her</u> for the sexual assault she fell victim to. School officials' reckless actions towards K.H. were untethered to any reason or fact.

122.     As a result of these unreasonably punitive actions, K.H. suffered and continues to suffer from various physical, emotional, and psychological injuries.

123.     Defendants' failure to exercise even the slightest care or diligence towards K.H. was the proximate cause of K.H.'s physical, emotional, and psychological deterioration.

124.     As a result of Defendants' gross negligence, K.H. suffered physical, emotional, and psychological damages in an amount to be determined at trial.

### AS AND FOR A SIXTH CLAIM FOR RELIEF
#### (Defendant's Negligent Infliction of Emotional Distress)

125.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

126.      School officials in Defendant's control negligently, unreasonably, and callously put K.H.'s physical safety in jeopardy.

127.     School officials had knowledge of the sexual assault perpetuated against K.H. while she was on a school-sponsored and school-supervised trip.

128.     Defendant's own HIB Policy regarding harassment, intimidation and bullying explicitly applies to incidents that take place, "on school property, at any school-sponsored function, [or] on a school bus."  HIB Policy at p. 1.

129.     School officials' abdication of their responsibilities and duties to protect K.H., their negligent mishandling of the investigation, their utter failure to adopt appropriate remedial measures, and their wanton, reckless, and irrational punitive actions against K.H., created a hostile environment which unreasonably endangered K.H.'s physical, emotional, and psychological well-being.

130.     As a result of Defendant's failure to exercise a reasonable degree of care over K.H. and its failure to adequately supervise students, train its employees, enforce its own policies, protect K.H, and provide K.H. with a safe and accessible educational environment, Defendant acted in a negligent manner.

131.     Defendant's negligence foreseeably caused injury to plaintiff K.H. Said injury includes physical, emotional, and psychological harm resulting in damages in an amount to be determined at trial.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
(Defendants' Negligent Supervision)

132.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

133.     Defendant, and those in its employ and/or control, owed K.H., a student in their care, the duty to reasonably protect her and keep her safe.

134.     Defendant, and those in its employ and/or control, unreasonably endangered K.H. by absolutely failing to take on any measures or procedures to appropriately monitor students during school-sponsored trips.

135.     Despite having specific knowledge and notice of dangerous and harassing student behavior during at least one previous school trip, school officials failed to appropriately and

reasonably monitor students during the bus rides to and from the 2016 school trip to Warren, NJ and failed to monitor them during their stay at Forest Lodge.

136.    As a result of Defendant's negligent and wanton breach of the duty it owed to K.H., K.H. suffered severe physical, emotional, and psychological distress.

137.    The harms perpetrated by Defendant are a proximate cause of the K.H.'s injuries and damages.

138.    As a result of Defendant's negligent infliction of emotional distress, K.H. has suffered physical, emotional, and psychological damages in an amount to be determined at trial.

## NOTICE OF CLAIM

139.    A Notice of Claim dated January 17, 2017  was sent via certified mail to PISCATAWAY TOWNSHIP BOARD OF EDUCATION,  PISCATAWAY TOWNSHIP BOARD OF EDUCATION TRANSPORTATION DEPARTMENT,  Elaine Flynn, Middlesex County Clerk, and to David B. Rubin, Esq., attorney for PISCATAWAY TOWNSHIP SCHOOL DISTRICT.

140.    More than six months have elapsed since the Notice of Claim was presented, and plaintiff's claims have not been settled or adjusted.

## JURY DEMAND

141.    Plaintiff demands a trial by jury on all issues pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE**, Plaintiff demands the following relief:

A.    On the FIRST Claim,  for violation of Title IX of the Educational Amendments Act of 1972, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and

psychological damages, and loss of educational opportunities plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

B. On the SECOND Claim, for retaliation in violation of Title IX of the Educational Amendments Act of 1972, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, and loss of educational opportunities plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

C. On the THIRD Claim, for violation of New Jersey Law Against Discrimination a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, and loss of educational opportunities plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

D. On the FOURTH Claim, for Defendant's negligence in breaching the duty owed to plaintiff, a judgment awarding Plaintiff damages in an amount to be determined at trial including, without limitation, damages to physical well-being, emotional and psychological damages plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

E. On the FIFTH Claim, for Defendant's breach of the duty it owed to Plaintiff with reckless indifference, a judgment awarding Plaintiff damages in an amount to be determined at trial including, without limitation, damages to physical well-being, emotional and psychological damages plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

F.   On the SIXTH Claim, for Defendant's negligent infliction of emotional distress, a judgment awarding Plaintiff damages in an amount to be determined at trial including, without limitation, damages to physical well-being, emotional and psychological damages plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

G.   On the SEVENTH Claim, for Defendant's negligent supervision a judgment awarding Plaintiff damages in an amount to be determined at trial including, without limitation, damages to physical well-being, emotional and psychological damages plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

H.   Together with such and further relief that this Court may deem just and necessary.

Dated:       Brooklyn, New York
             September 17, 2018

                                        Respectfully submitted,


                              By:    *S/ Adam Massey*
                                     Adam Massey (AM1320)
                                     adam@cagoldberglaw.com

                                     C.A. Goldberg PLLC
                                     16 Court Street, Suite 2500
                                     Brooklyn, NY 11241
                                     Tel. (646) 666-8908
                                     Fax. (718) 514-7436
                                     *Attorneys for Plaintiff*